# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| ALORICA INC., § § *Plaintiff,* § § v. § § TECH MAHINDRA (AMERICAS) INC., § § § *Defendant.* § | Civil Action No. 4:24-cv-30 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Alorica Inc.'s Motion for Protective Order and Motion to Quash Defendant's Subpoenas Served on Cerberus Business Finance LLC (Dkt. #81). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This case arises from a contract between Plaintiff and Defendant concerning customer service outsourcing for AT&T. As part of discovery, Defendant served two subpoenas (the "Lender Subpoenas") on Cerberus Business Finance LLC, Plaintiff's primary lender—one for documents and one for testimony (Dkt. #81 at pp. 1–2). These subpoenas sought information about Plaintiff's revenue, profits, and losses tied to AT&T lines of business, communications referencing Defendant during Plaintiff's refinancing, and Plaintiff's net worth (Dkt. #81 at p. 2).

Plaintiff contends that the Lender Subpoenas are improper because they circumvent party discovery under Rule 34, impose undue burdens on a non-party, and seek confidential financial information (Dkt. #81 at pp. 1–3). Plaintiff asserts that it has already produced responsive "documents regarding revenue, profits, and/or losses in relation to the Contract" (Dkt. #81 at

pp. 4–5). Any further relevant information sought from Cerebrus is allegedly already within Plaintiff's possession, custody, or control, which is available to Defendant with less intrusive means (Dkt. #81 at pp. 1–2). Plaintiff also emphasizes that Cerberus, as a lender, would not have more detailed financial data about Plaintiff's "revenue, profits, and/or losses" than Plaintiff itself (Dkt. #81 at p. 5).

Defendant argues that the Lender Subpoenas are necessary to test Plaintiff's alleged claim that "[Plaintiff] does not have *any* responsive documents in its possession or control—in direct contradiction with sworn testimony of two separate witnesses, including its own 30(b)(6) designate" (Dkt. #93 at p. 2). Defendant points to prior deposition testimony from Plaintiff's witnesses indicating that Plaintiff maintains AT&T-specific budgets reflecting revenue and costs, which Defendant contends have not been produced (Dkt. #93 at pp. 3, 9–10). Defendant assert that the subpoenas are consistent with the Court's prior ruling permitting "other means" of discovery if Plaintiff certified it lacked responsive documents (Dkt. #93 at pp. 2–4).

On March 5, 2025, Plaintiff filed its Motion for Protective Order and Motion to Quash the Lender Subpoenas, asserting that they were duplicative, overbroad, and sought confidential business information (Dkt. #81). On March 18, 2025, Defendant filed its Response, arguing that the subpoenas were a proper means to obtain highly relevant financial documents that Plaintiff did not produce (Dkt. #93). On March 25, 2025, Plaintiff filed its Reply, reiterating that all responsive materials have been produced or do not exist, and that Cerberus does not have additional information (Dkt. #97). The Motion is now ripe for adjudication.

2

## LEGAL STANDARD

### I. Protective Order Legal Standard

Under Federal Rule of Civil Procedure 26(c)(1), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). The burden is upon the party seeking the protective order "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (internal quotation marks and citation omitted). Therefore, a protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Laundry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). The Court has broad discretion in determining whether to grant a motion for protective order because it is "in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

### II. Motion to Quash Legal Standard

Pursuant to Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . " FED. R. CIV. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. *Id.*; *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). Relevant information includes "any matter that bears on, or that could reasonably lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). In other words, "[r]elevancy is broadly construed, and a request for discovery

should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)). Consequently, "[u]nless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed." *Brady*, 238 F.R.D. at 437. The Court has provided guidance in matters of discovery. The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "documents containing, information 'relevant to the claim or defense of any party.'" (Dkt. #75 at p. 4). Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense. . . . " LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Pursuant to Rule 45(d)(3), upon timely motion, "the court for the district where compliance is required must quash or modify a subpoena that," *inter alia*, requires disclosure of privileged or protected matter or subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A). "The court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *RYH Properties, LLC v. West*, 2011 WL 13196550, at *2 (E.D. Tex. Feb. 3, 2011) (citing *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003)). When determining whether a subpoena is unduly

burdensome, a court may consider: "(1) relevance of the information requested, (2) the need of the party for the documents, (3) the breadth of the document request, (4) the time period covered by the request, (5) the particularity with which the party describes the requested documents, and (6) the burden imposed." *West*, 2011 WL 13196550, at *2 (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); Brady, 238 F.R.D. at 437). The Court may also consider whether "the subpoena was issued to a non-party to the litigation and the expense and inconvenience of compliance to the non-party." *Id.* (citing *Wiwa*, 392 F.3d at 818). The moving party has the burden of showing "that compliance with the subpoena[s] would be unreasonable and oppressive." *Wiwa*, 392 F.3d at 818.

## ANALYSIS

The Court must determine whether Defendant's Lender Subpoenas are enforceable or must be quashed. Plaintiff argues that it has standing to challenge the subpoenas because "all the documents and information requested are within [Plaintiff's] possession or control" and "[Defendant's] request for all documents concerning [Plaintiff's] net worth will reveal trade secret information" (Dkt. #81 at pp. 3–4). It further contends that the subpoenas improperly bypass Rule 34's party discovery procedures and impose undue burdens on a non-party for information Plaintiff has already produced, to the extent they exist (Dkt. #81 at p. 4).

Defendant responds that the Lender Subpoenas are a proper and necessary means of testing Plaintiff's assertion that no responsive documents exist (Dkt. #93 at p. 2). It also disputes whether Plaintiff has standing to raise these objections on Cerberus's behalf and maintains that the subpoenas are tailored to obtain highly relevant documents that Plaintiff has failed to produce (Dkt. #93 at pp. 7–8, 12).

To resolve the dispute, the Court must address three threshold questions: (1) whether Plaintiff has standing to move to quash the Lender Subpoenas; (2) whether the Lender Subpoenas are improper because they circumvent party discovery; and (3) whether the burden or scope of the Lender Subpoenas justifies quashing them.[1] The Court considers each issue in turn below.

## I. Plaintiff's Standing to Challenge the Lender Subpoenas

A party generally lacks standing to challenge a subpoena served on a third party unless the subpoena implicates the party's own rights or privileges. *See Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Performance Pulsation Control, Inc. v. Sigma Drilling Techs., LLC*, 2018 WL 5636160, at *3 (E.D. Tex. Oct. 30, 2018). Plaintiff contends it has standing because the Lender Subpoenas—allegedly seeking Plaintiff's confidential business records, implicating Plaintiff's claimed trade secrets, and threatening Plaintiff's business relationship with Cerberus—are within Plaintiff's possession or control (Dkt. #81 at pp. 3–4; *see* Dkt. #81 at p. 1). Notably, documents pertaining directly to the moving party's finances can give rise to standing. *See Singleton v. Cannizzaro*, No. CV 17-10721, 2020 WL 375600, at *5 (E.D. La. Jan. 23, 2020) ("[A] party has sufficient personal right and interest in his or her financial . . . information" to challenge a third-party subpoena "seeking [the party's] financial . . . information.") (citation omitted); *Gray-Standberry v. Ashley Distribution Services, Ltd.*, No. 6:20-CV-638-ADA-JCM, 2021 WL 2792984, at *2 (W.D. Tex. Mar. 3, 2021) ("[A] party has standing to challenge a subpoena issued to a non-party if the subpoena seeks proprietary, confidential, or protected information sensitive to the party.").

---

[1] The Court limits its analysis to Topic 1 of the Lender Subpoenas, which seeks documents and testimony related to Plaintiff's revenue, profits, and losses from its AT&T lines of business (Dkt. #81 at p. 2). Topics 2 and 3 concerning Plaintiff's refinancing and net worth were expressly withdrawn by Defendant during discovery and are therefore not addressed in this Order (Dkt. #93 at pp. 2–3).

Here, Plaintiff has asserted that the subpoenas seek documents and testimony that reflect its confidential financial data—including detailed revenue, profit, and client-level projections (Dkt. #81 at pp. 2–3). Plaintiff has also certified that, to the extent responsive documents exist, they would originate from Plaintiff's own records and not from Cerberus (Dkt. #81 at pp. 4–7). Because the Lender Subpoenas seek financial information already within Plaintiff's possession, custody, and control that may implicate Plaintiff's trade secrets, the Court concludes that Plaintiff has standing to challenge the subpoenas. *See Singleton*, 2020 WL 375600, at *5; *Gray-Standberry*, 2021 WL 2792984, at *2.

## II. Whether the Subpoenas Improperly Circumvent Rule 34 Party Discovery

### A. The Effect of the Court's Prior Order Authorizing "Other Means"

Plaintiff argues that the Lender Subpoenas are improper because they circumvent the ordinary discovery process under Federal Rule of Civil Procedure 34 governing requests for production between parties (Dkt. #81 at pp. 7–8). *See* FED. R. CIV. P. 34. Plaintiff contends that Defendant should be required to seek responsive documents from Plaintiff directly—and only from Plaintiff—before burdening a non-party lender with subpoenas (Dkt. #81 at p. 6). Defendant responds that the subpoenas were served only after Plaintiff asserted it did not maintain client-level profitability records and after the Court expressly permitted Defendant to explore that assertion "by other means" (Dkt. #93 at p. 11). During a February 4, 2025 discovery conference, the Court ruled that documents regarding revenue, profits, and losses were "highly relevant," ordered Plaintiff to certify whether responsive materials existed, and expressly stated that if Plaintiff lacked such materials, Defendant could "try to explore that in other means to test [it]" (Dkt. #93 at pp. 10–11; *see* Minute Entry, February 4, 2025).

That prior order provides important context. The Court did not preauthorize third-party discovery in the abstract. Instead, it conditioned such discovery on Plaintiff's representation that it had no additional responsive documents (Dkt. #93 at p. 11) ("[I]f [Plaintiff doesn't] have these documents, then just certify that as such, and then . . . the Defense can certainly try to explore that in other means to test that."). Plaintiff later served supplemental discovery responses reiterating that no other documents reflecting client-level profitability or loss data exist (Dkt. #93 at pp. 4–5). On that basis, Defendant issued subpoenas to Cerberus seeking the same categories of information the Court had deemed relevant (Dkt. #93 at pp. 8–9, 11). The Lender Subpoenas thus fall within the scope of discovery the Court previously contemplated.

Accordingly, the Court finds that its prior order authorized third-party discovery as a follow-up mechanism if Plaintiff certified that responsive documents did not exist. Because Defendant pursued the Lender Subpoenas only after receiving that certification, the subpoenas are not per se improper under Rule 34.

### B. Whether the Lender Subpoenas Seek Information Available from Plaintiff

Having established that the Court's prior order permits Defendant to pursue third-party discovery, the question remains whether the documents Defendant seeks are within Plaintiff's possession, custody, or control. Defendant argues that Plaintiff's representations regarding its lack of client-specific profit and loss data are contradicted by prior deposition testimony from two of Defendant's witnesses (Dkt. #93 at p. 3). According to Defendant, Plaintiff's Rule 30(b)(6) witness confirmed that Plaintiff maintained budgets at the client level that included revenue and cost data (Dkt. #93 at p. 3). Defendant also points to testimony from Plaintiff's 30(b)(6) witness indicating that such budgets would show whether the AT&T account was profitable (Dkt. #93 at p. 3) (describing "a budget for AT&T" reflecting "the amount of revenue that [Plaintiff] would bring

8

in from [AT&T] versus the costs associated with them."). Defendant contends that Plaintiff's failure to produce these records justifies seeking them from Cerberus (Dkt. #93 at p. 4).

Plaintiff responds that it has already produced responsive revenue information in the form of a ledger and over 30,000 pages of discovery, and that it has certified no additional client-level profitability records exist (Dkt. #81 at pp. 4–5; Dkt. #93 at pp. 4–5). Plaintiff further maintains that Cerberus would not have any additional responsive documents because Cerberus was never provided client-by-client financial forecasts or budget-level profitability data (Dkt. #81 at pp. 4–5).

At this stage, the record contains conflicting evidence about whether additional responsive documents exist and whether Cerberus would have them. Plaintiff has certified that it does not possess further responsive documents and that it did not give Cerberus the information described in the Lender Subpoenas (Dkt. #81 at pp. 4–5). While Defendant is entitled to test that, the Court must still assess whether the subpoenas seek information reasonably obtainable only from Cerberus. *See Orion Marine Constr., Inc. v. Coyle*, No. 4:17-cv-522, 2017 WL 4875596, at *7 (S.D. Tex. Oct. 26, 2017) (quashing third-party subpoena because documents and information were obtainable through a named party and directing "if [d]efendants seek further information from [third parties], they are advised to seek leave of Court—after demonstrating why they cannot obtain the requested documents from Orion directly in the course of normal discovery."). The Court concludes, based on Plaintiff's representations, that the documents sought either do not exist or, if they do, remain within Plaintiff's control. Accordingly, to the extent the subpoenas request documents that Plaintiff has certified do not exist and that Cerberus never received, the Court must consider whether the burden of compliance on Cerberus is justified. The Court does so below.

9

### III. Whether the Lender Subpoenas Are Overbroad or Unduly Burdensome

Even if Plaintiff has standing and the Lender Subpoenas are procedurally proper, the Court must determine whether they should be quashed or limited because they are overbroad or impose an undue burden. FED. R. CIV. P. 45(d)(3)(A). Under this rule, a subpoena must be quashed or modified if it subjects a person to undue burden. Courts evaluate this burden using several factors, including: (1) the relevance of the information requested; (2) the requesting party's need for the documents; (3) the breadth of the request; (4) the time period covered by the request; (5) the particularity of the description; and (6) the burden imposed. *See Wiwa*, 392 F.3d at 818.

On their face, the Lender Subpoenas seek financial records and testimony spanning a nearly seven-year period—from July 1, 2018 to the present—covering projected and actual revenue, profits, and losses for multiple AT&T business lines, including Gold, Acquire, Sapphire, Centers of Excellence, and After Hours (Dkt. #93 at p. 8). Plaintiff argues that this scope is disproportionate to the needs of the case, especially given that the contract dispute arose in 2023 and the requested materials include confidential financial projections with no link to the claims or defenses (Dkt. #81 at pp. 6–7). Plaintiff also contends that the requests would require Cerberus to produce Plaintiff's sensitive borrower information, further compounding the undue burden (Dkt. #81 at p. 7).

Defendant responds that the documents are "highly relevant," citing the Court's prior findings that revenue and profitability data are central to the parties' contract claims and to Defendant's defenses (Dkt. #93 at pp. 11–12). Defendant also emphasizes that the scope of the subpoena reflects the categories of information that Plaintiff claims not to possess, and that Plaintiff did not meet its burden to show that Cerberus's compliance with the subpoenas would impose an undue burden (Dkt. #93 at pp. 12–13). As a result, Defendant requests that the Court quash the subpoenas, or in the alternative, modify them to address any undue burden (Dkt. #93 at p. 13).

10

On balance, the breadth of the requests spanning multiple lines of business over nearly seven years raises legitimate concerns about overbreadth and proportionality, particularly given the limited connection between Cerberus and the underlying contract dispute. Although the information sought is relevant, Plaintiff has certified that Cerberus was never given the financial records in question (Dkt. #97 at p. 5). Given that context, and consistent with Rule 45(d)(3)(C), the Court finds that modification rather than wholesale quashing of the subpoena is appropriate. *See Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003) (suggesting that modification is "preferable to quashing" a subpoena).

The Court concludes that Plaintiff has standing to challenge the Lender Subpoenas because they seek confidential financial information belonging to Plaintiff and potentially affect its relationship with a non-party lender. Although the Court previously authorized Defendant to pursue "other means" of discovery if Plaintiff certified that responsive documents did not exist, the subpoenas at issue seek broad categories of information that Plaintiff avers Cerberus does not possess. On this record, requiring Cerberus to respond would impose an undue burden, particularly given the scope of the requests and the minimal likelihood that Cerberus holds relevant documents beyond those already addressed in party discovery. The Court will therefore **GRANT in part** and **DENY in part** Plaintiff's Motion. The Court orders Defendant to modify the Lender Subpoenas as described below.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Alorica Inc.'s Motion for Protective Order and Motion to Quash Defendant's Subpoenas Served on Cerberus Business Finance LLC (Dkt. #81) are hereby **GRANTED in part** and **DENIED in part**. The Lender Subpoenas are **MODIFIED**

to eliminate Topics 2 and 3, consistent with Defendant's withdrawal (Dkt. #97 at pp. 2–3), and limited as to Topic 1 to cover only documents or testimony in Cerbeus's possession reflecting actual, not projected, revenue or profit and loss figures specifically tied to Plaintiff's AT&T business between January 1, 2021 and December 31, 2023. Cerberus need not respond to requests for projected financials, net worth data, or internal lender analyses not sourced from Plaintiff.

If Cerberus certifies that it does not possess responsive documents within this narrowed scope, no further compliance is required. Any materials produced responsive to the subpoenas shall be treated as "Attorneys' Eyes Only" under the operative Protective Order (Dkt. #63).

**IT IS SO ORDERED.**
**SIGNED this 8th day of August, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE